UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDSON FLORES,

                    Petitioner,

          -v-                                                    13-CV-128-JTC

ERIC H. HOLDER, Attorney General
of the United States;
MICHAEL PHILIPS, Field Office
Director for Detention and Removal,
Buffalo Field Office, Bureau of
Immigration and Customs Enforcement;
DEPARTMENT OF HOMELAND SECURITY,
MARTIN HERON, Buffalo Federal
Detention Facility,

                    Respondents.

_____

## INTRODUCTION

       Petitioner Edson Flores, an alien under a final order of removal from the United

States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2241 seeking release from detention in the custody of the United States Department of

Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending

the execution of a final immigration order of removal issued against him.  Item 1.  As

directed by this court's order entered February 14, 2013 (Item 2), respondent[1] has

submitted an answer and return (Item 4), along with an accompanying memorandum of law

_____

[1]  The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* section  2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

(Item 5), in opposition to the petition.   In response, petitioner has filed a reply (Item 9) and

a memorandum of law (Item 8).  For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Honduras, arrived in the United States at an

unknown place, on an unknown date, without being admitted or paroled after inspection

by an Immigration officer.  *See* Item 4-1 (Payan Decl.), ¶ 5; Item 1, ¶ 1.

According to DHS records, petitioner has the following criminal history:

-On or about December 22, 2008, petitioner was convicted in New York
County Supreme Court, State of New York, of two counts of Sexual Abuse
in the First Degree, in violation of N.Y. Penal Law § 130.65 and was
sentenced to a term of incarceration of 42 months.

-On or about January 29, 2009, petitioner was convicted in New York County
Supreme Court, State of New York, of two counts of Sexual Abuse in the
First Degree, in violation of N.Y. Penal Law § 130.65 and was sentenced to
a term of incarceration of 42 months.

*See* Item 4-2 ("Exh. A"), pp. 6, 12.

On April 9, 2009, while at the Ulster Correctional Facility in Napanoch, New York,

petitioner was encountered by DHS Criminal Alien Program officers.  *See* Item 4-1, ¶ 8.

Deportation proceedings were commenced by a Notice to Appear ("NTA") served May 6,

2009, which charged petitioner with being subject to removal from the United States

pursuant  to § 212(a)(6)(A)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C.

§ 1182(a)(6)(A)(I), as an alien present in the United States without being admitted or

paroled.  Upon his release from the custody of the New York State Department of

Corrections and Community Supervision, petitioner was received into DHS custody on

2

June 10, 2011.  Payan Decl., ¶ 10, Exh. A, pp. 7, 19.  On July 21, 2011, petitioner was served with additional charges pursuant to INA § 212 (a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(iii), as an alien convicted of a crime involving moral turpitude.  *Id.* at ¶ 11; Exh. A, pp. 12-13.

On January 6, 2012, an Immigration Judge ("IJ") ordered petitioner's removal to Honduras.  Payan Decl., ¶ 12.  The removal order became final on May 22, 2012, when the Board of Immigration Appeals ("BIA") dismissed petitioner's appeal from the IJ's decision.  *Id.*, Exh. A, p.10.

On May 23, 2012, DHS sent a presentation packet to the Consulate General of Honduras (the "Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal.  Exh. A, p. 19.  On May 24, 2012, the Consulate issued a travel document which was valid for 30 days.  *Id.,* p. 18.

On June 15, 2012, petitioner filed a petition for review of the BIA's May 22, 2012 decision in the United States Court of Appeals for the Second Circuit.  Exh. A, pp. 20-22.  The petition for review was accompanied by a request for a stay of removal.  *Id.*

On June 27, 2012, DHS served petitioner with a formal Warning for Failure to Depart, along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States.  Exh. A, p. 9.  The warning form advised petitioner, among other things, of penalties under INA § 243, for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that, pursuant to INA § 241(a)(1)(C), a failure to comply or to provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention.  *Id.*

In August 2012, DHS conducted a review of petitioner's custody status, in accordance with immigration regulations.  Exh. A, pp. 6-8.  On August 27, 2012, DHS issued a Decision to Continue Detention advising petitioner that, based upon the totality of information available in his file, DHS determined that petitioner would be a flight risk if he were to be released from custody.  *Id.,* p. 7.

In November 2012, DHS Headquarters Custody Management Unit ("HQCMU") conducted a further review of petitioner's custody status, including an in-person interview of petitioner on January 31, 2013, at the Buffalo Federal Detention Facility in Batavia, New York. Exh. A, pp. 4-5.  Following completion of the file review and interview, petitioner was notified on January 25, 2013, that DHS determined to continue his detention in DHS custody.  *Id.*

A further review of petitioner's custody status was conducted by DHS HQCMU in February 2013.  Following this review, petitioner was again advised that DHS determined that he would continue in detention.  Exh. A, pp. 2-3.

Meanwhile, petitioner filed this action on February 6, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued post-final-removal order detention in DHS custody is unlawful since it has exceeded the "presumptively reasonable" six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  On February 28, 2013, the Second Circuit granted petitioner's motions for assignment of counsel and for a stay of the removal order.  *See Flores v. Holder,* No. 12-2406 (2d Cir.); Exh. A, pp. 23-24.  DHS records indicate that the medical staff at the Buffalo Detention Facility has

cleared petitioner for removal.  Payan Decl., ¶ 22.

Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's initial detention in DHS custody was pursuant to INA § 236, pending completion of removal proceedings.  After the order of removal became final on May 22, 2012, petitioner's detention was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

(i)  The date the order of removal becomes administratively final.

(ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

6

practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

7

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on June 10, 2011, upon his release from state custody, for detention pending completion of immigration removal proceedings as authorized by INA § 236.[3] *See* Item 4-1, ¶ 13. This

---

[3]The present petition does not challenge detention under INA § 236 during the period prior to the final order of removal. *See* , e.g., *Persaud v. Holder*, 2011 WL 5326465, at *2 (W.D.N.Y. November 3, 2011) (detention pursuant to INA § 236 during period prior to pre-final order of removal did not violate due process; citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)).

detention continued until May 22, 2012, when the BIA dismissed petitioner's appeal from the Immigration Judge's order of removal.  *See* 8 C.F.R. § 1241.1(b) (order of removal becomes final upon dismissal of appeal by BIA).

After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced.  DHS promptly undertook efforts to secure a travel document for petitioner's removal to Honduras by sending a presentation package to the Nigerian Embassy on May 23, 2012.  *See* Item 4-1, § 13; Exh. A, p. 19.  Then, on June 15, 2012, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal. *Id.* at ¶ 14.  Thereafter, the Second Circuit granted petitioner's motion for a stay of removal on February 28, 2013.  *Id.,* ¶ 20; Exh. A, pp. 23-24.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court.  *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. November 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying petition for review of BIA's dismissal of appeal from removal order, forbearance policy is "the equivalent of a court-ordered stay of removal");

*Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. October 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F.Appx. 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process).

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. January 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Furthermore, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang v. Ashcroft*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Honduras in the reasonably foreseeable future. He alleges that the respondents will be unable to complete the removal process because of his serious medical condition. However, as discussed above, DHS successfully obtained travel documents for petitioner's removal to Honduras and DHS records indicate that the medical staff at the Buffalo Detention Facility has cleared petitioner for removal. The only obstacle to petitioner's immediate removal is the pending stay order issued by the Second Circuit. The 90-day statutory removal period will not recommence until the Second Circuit court issues its final order and lifts the stay of removal. *See Wang v. Ashcroft,* 320 F.3d at 147; 8 U.S.C. § 1231(a)(1)(B) (ii).

In the meantime, petitioner's continued detention is not in violation of his due process rights as long as his removal is reasonably foreseeable. Significantly, petitioner has provided no evidence that DHS will be unable to remove him within a reasonable time following the resolution of his petition for review. Detention during an appellate stay of

11

removal, whether formal or in accordance with the Second Circuit forbearance policy, is not indefinite because the end of the litigation provides a definite end point. *See Prieto-Romero v. Clark,* 534 F.3d 1053, 1065 (9th Cir. 2008) (alien's lengthy detention not indefinite under INA § 236 where end point foreseeable with conclusion of litigation); *Soberanes v. Comfort,* 388 F.3d 1305, 1311 (10th Cir. 2004) (alien's detention during judicial review not indefinite because it has a "definite and evidently impending termination point"). Additionally, there is no institutional barrier to petitioner's removal to Honduras. In recent years, DHS has successfully repatriated thousands of aliens to Honduras.[4]

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on any delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This

---

[4] For example, DHS statistical reports show that in fiscal year ("FY") 2009, a total of 27,290 aliens were repatriated to Honduras; in FY 2010, 25,131 aliens were repatriated to Honduras; and in FY 2011, 21,963 aliens were repatriated to Honduras. Item 4-1, ¶ 21 (citing DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3).

dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: June   5   , 2013
p:\pending\2012\13-128may30.2013

13